VIOLA COHN et al., Respondents, *v.* BORCHARD AFFILIATIONS, Appellant.

First Department, May 14, 1968.

*Lewis I. Wolf* of counsel (*Henry Wolfman,* attorney), for appellant.

*Abraham W. Sereysky* for respondents.

STEUER, J. Special Term denied defendant's motion to dismiss the action for lack of prosecution upon the ground that no 45-day notice pursuant to CPLR 3216 was served. Were it not for the rule it would not be arguable that the unreasonable neglect to prosecute the action shown by this record would mandate dismissal (*Sortino* v. *Fisher,* 20 A D 2d 25). Defendant argues that despite the statute the same relief should be accorded, basing its argument on the contention that the statute is unconstitutional.

While the constitutionality of the statute has been raised before (see *Commercial Credit Corp.* v. *Lafayette Lincoln-Mercury,* 17 N Y 2d 367, 373), it has not been found necessary to pass on the question. It may fairly be said, therefore, that

prior adjudications on the section and its predecessors recognized the existence of a possible constitutional question but were never required to reach it. As constitutional questions are not decided where an alternative ground of decision is present (*Matter of Peters* v. *New York City Housing Auth.*, 307 N. Y. 519, 527–528; *Matter of Keogh* v. *Wagner*, 20 A D 2d 380, affd. 15 N Y 2d 569), constitutionality of the rule cannot be implied from such holdings.

CPLR 3216 provides, flatly, that the court, either on its own motion or that of a party, may not dismiss an action for failure to prosecute unless and until issue has been joined and one year has elapsed, and, further, a notice served that prosecution is to be resumed and a note of issue served in 45 days. The vice of the section lies in the fact that it can deprive ·the court of control of its own calendars.

"It is ancient and undisputed law that courts have an inherent power over the control of their calendars, and the disposition of business before them, .including the order in which disposition will be made of that business." (*Plachte* v. *Bancroft Inc.*, 3 A D 2d 437, 438.) This proposition is axiomatic and citation of the authority is only justified because the felicity of expression bears repetition. As the power is inherent, it is not dependent on legislative authorization (*Riglander* v. *Star Co.*, 98 App. Div. 101, affd. 181 N. Y. 531). It would follow that the creation of the court grants to it the inherent powers. If the court is, as in this instance, constitutionally created, these powers cannot be limited except by constitutional means. Legislative power to regulate procedure does not go to the extent of permitting interference with inherent powers (*Riglander* v. *Star Co.*, *supra*, p. 108; *Colon* v. *Lisk*, 153 N. Y. 188, 195).

It would therefore appear that whether or not a restriction on the court's power to dismiss for lack of prosecution is valid depends on whether that power is an inherent one, i.e., one such as the power to regulate its calendar, so necessary to its proper functioning as to be irrefutably implied. We believe that it is, and that it has always been, so regarded. From the earliest times the English courts enjoyed this power (see 3 Blackstone's Comm., p. 296, quoted in *Herring* v. *Poritz*, 6 Ill. App. 208, 211). All powers of the English courts were vested in the New York Supreme Court (see *Matter of Steinway*, 159 N. Y. 250, 255) and since 1691 the power has been exercised. Courts of other jurisdictions have described it as an inherent power (*State ex rel. Croker* v. *Chillingworth*, 106 Fla. 323, 326) and have so held without employing the particular word. (See note to *Grigsby* v. *Napa County*, 36 Cal. 585, in 95 Am. Dec.

213, 215.) The Federal courts, which exercise a more stringent method of control by dismissing on the merits (Fed. Rules of Civ. Pro., rule 41, subd. [b]) do so by virtue of inherent power. Very recently the English Court of Appeal had this to say in regard to dismissal of an action for excessive delay: "This is a stern measure; but it is within the inherent jurisdiction of the court, and the rules of court expressly permit it." (*Allen* v. *Sir Alfred McAlpine & Sons,* [1968] 1 All E. R. 543, 547.) Moreover, dismissal for lack of prosecution has been recognized as one of the important tools in calendar control, itself an inherent power (*Gino* v. *Syracuse Mem. Hosp.,* 23 A D 2d 964, 965).

The condition resulting from the restrictive factors of CPLR 3216 is far more serious than the foregoing might portend. It is not merely a question of trespass by one branch of the government on another and the resultant pique or resentment. The courts in this department are plagued by a substantial number of cases which are instituted with no intention that they will ever be brought to trial (see *Plachte* v. *Bancroft Inc., supra,* p. 442). If the original purpose of bringing the action, settlement, is not realized, the case is allowed to remain without further advancement or with a minimum of activity designed to conceal the reluctance to put it to issue. It is these cases that clog the calendars and interfere with the prompt disposition of genuinely contested issues (*Gino* v. *Syracuse Mem. Hosp., supra*). But while the attorneys who institute these actions have little or no intention of ever disposing of them by trial, they are even more averse, when the nature of the case is revealed by their casual attention to it, to have it dismissed. As long as the case is viable, it is a potential source of some recovery, and this because of considerations other than its merit. It is these lawyers who, after several unsuccessful efforts, succeeded in procuring the enactment of the present rule (see *Commercial Credit Corp.* v. *Lafayette Lincoln-Mercury, supra,* p. 370).* As a result the court is deprived of a traditional procedure of material significance in the management of its calendars.

---

* The rule there involved was the predecessor to the present rule. The court found that a legislative intent that the courts have "in effect lost their power to dismiss actions for delay except pursuant to the strict formula" was so inadvisable and so contrary to traditional concepts that the then rule could not be so interpreted (see *Thomas* v. *Melbert Foods,* 19 N Y 2d 216), and as seen above reserved the question of the constitutionality of a rule which, as the present one, mandates that interpretation.

It may be argued that the rule does not take away the inherent power but merely regulates its use. The argument is defeated by a mere perusal of the terms of the rule. The power is so curtailed that it is for all practical purposes abolished. Delay prior to joinder of issue and for a year thereafter is inviolate. And thereafter a procrastinator must have 45 days' written notice that a note of issue (certainly a token show of activity) may be required of him. A similar provision for notice before dismissal could be sought was claimed to exist in England by virtue of an interpretation of the rules adopted by solicitors. The consequent situation apparently plagued the English courts and it was met with characteristic directness: " Where after action had been brought it became apparent to the plaintiff's solicitor that the action had little prospect of success, he took no further step in the action and it was allowed to remain dormant ever after on the tacit understanding that the defendant would not seek an order for his costs by applying to have the action dismissed. It was contended that if the defendant wished to depart from this understanding, the plaintiff should receive warning in time to enable him to do likewise and to revive the action. * * * Let us not mince words. This tacit understanding, if it exists, is based at best on bluff, at worst on blackmail. The sooner it is abandoned the better. To misuse the rules of court for such a purpose is an abuse of its process.'' (DIPLOCK, L. J., in *Allen* v. *Sir Alfred McAlpine & Sons, supra,* p. 555.)

Indubitably the purpose to emasculate the power would be realized in the rule. The net result is that the courts, charged with a duty to administer the disposition of litigated cases with all the promptitude and dispatch that justice will permit, would be deprived of a means of meeting that obligation. For these reasons, namely, that its restrictive provisions impair and interfere with the court's inherent power to control its own calendars, CPLR 3216, to the extent that it restricts dismissal for general delay, is unconstitutional.

The order entered September 11, 1967, should be reversed on the law and motion dismissing the action for lack of prosecution granted with costs.

The Attorney-General, pursuant to CPLR 1012 (subd. [b]), has been notified of these proceedings and elected not to intervene.

STEVENS, J. P. (dissenting). The majority are now holding CPLR 3216 to be unconstitutional in part. They conclude that the section, by its terms, deprives the court of its inherent power to control its own calendars, that since the court is constitution-

ally created any limitation upon its control must be by constitutional means, and the method chosen does not conform to that requirement.

I do not quarrel with many of the propositions so ably stated in the majority opinion. I am unable to agree, however with the conclusion that the statute is an unconstitutional attempt to infringe upon power inherent in the court and must be disregarded.

CPLR 3216 is a procedural rule governing dismissals. The grounds which ordinarily and reasonably serve as grounds for dismissal are recognized and enumerated in the statute. The limitation upon their immediate application is the 45-day notice requirement. The conditions precedent to dismissal are three: (1) issue must have been joined, (2) one year must have elapsed since the joinder of issue, and (3) a 45-day written demand to resume prosecution and serve and file a note of issue within such period must be served by registered or certified mail. Until such note of issue is served and filed the case is not actually on the calendar of the court. Consequently, the court is not hindered at that stage in the control of its calendar.

Every action commenced involves some client's interests. The quality of representation may vary. Where the lawyer is dilatory, the case may be dismissed summarily or on motion in the absence of a statute requiring preliminary notice. And this would be true regardless of the merits of the cause. On balance this would seem a severe penalty to visit upon any unoffending client. While such dismissal ordinarily is not on the merits (CPLR 3216, subd. [a]), if the Statute of Limitations has created a bar (CPLR 205; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac. § 205), the client's only recourse is against the attorney. This could be an unsatisfactory remedy. The Legislature probably recognized the problems attendant upon summary dismissal, or dismissal upon notice, and in an effort to protect the innocent client and yet not unduly hamper the courts, enacted the 45-day notice provision. The court is not deprived of power to impose lesser penalties for unreasonable delay (CPLR 3216, subd. [a]; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 3216.04, 3216.15). The legislative objective is desirable, and the means adopted reasonably calculated to achieve a proper end.

While the court necessarily must have a broad control over its calendars, the Legislature has, upon occasion, provided, by statute, how that calendar shall be run in terms of priority (see CPLR 3403, 3404) and how a trial shall be conducted (CPLR 4012 *et seq.*). There is even a limitation on the granting

of leave to replead unless the court is satisfied the party has good ground to support his cause (CPLR 3211, subd. [e]). The time limitations for certain motions (for example, CPLR 3123) or procedures (CPLR 3031 *et seq.*) may, directly or indirectly, affect the calendar. In other words, it would hardly be asserted that every legislative action affecting the calendars constitutes an unconstitutional interference. The fact that the section in question, or portion thereof, imposes a restriction upon the exercise of the court's power is not alone sufficient to render the section unconstitutional where, in fact it does not deprive the court of such power.

Since the 45-day notice required by CPLR 3216 was not given, the order denying the motion should be affirmed.

EAGER and McNALLY, JJ., concur with STEUER, J.; STEVENS, J. P., dissents in opinion in which TILZER, J. concurs.

Order entered September 11, 1967, reversed on the law with $30 costs and disbursements to the appellant, and the motion dismissing the action for lack of prosecution granted with $10 costs.